**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEB 1 1 2008

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

NOAH MOORE, #24804-013          *
FCI ELKTON
P.O.BOX 10                      *
LISBON, OHIO 44432
            Plaintif,           *     Case: 1:08-cv-00223
        -vs-                           Assigned To : Sullivan, Emmet G.
                                       Assign. Date : 2/11/2008
UNITED STATES  OF AMERICA,             Description: FOIA/PRIVACY ACT

        Defendant.              *

## COMPLAINT

1.  This is a complaint to this Honorable Court about the United
States' government's failure to provide the Plaintiff with the documents
he requested under Freedom of Information, to wit, the telephone call
monitoring log reports from January 2003 to September 2003.  These items
were requested from the government, explaining that a batch of these
telephone logs had already been turned over to Plaintiff during his
criminal trial, and that there was nothing in the batch requested that
required any exemption from discovery.

## JURISDICTION OF THIS COURT

2.  This Court has subject matter jurisdiction to review the
government's failure to provide the said documents, pursuant to Title
5 U.S.C., §§552 and 552(b), et seq, and 28 U.S.C., §1331.  Furthermore,
this complaint is brought forth under Haines v. Kerner, 404 U.S. 519(1972).

## FACTS OF THE CASE

3.  On June 25, 2007, the Department of Justice of the United States
Government denied Plaintiff relief stating primarily that release of the
requested documents "could reasonably be expected to constitute an
unwarranted invasion of the privacy of a third party.

**RECEIVED**

-1-

JAN 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

4.  On July 18, 2007, Plaintiff's request for reconsideration was also denied.

## CAUSE OF ACTION

5.  The government's primary reason for denying relief is that it believes that producing the telephone log will constitute an unwarranted invasion of the personal privacy of a third party.  However, Plaintiff posits that such concern is inapplicable here because a greater portion of the telephone log for the calls between Plaintiff and the government witness against him(Hillary Williams---the alleged third party) had already been released to this Plaintiff when Hillary Williams took the witness stand against this Plaintiff.  As such, there is no need to purport to protect his privacy now.

6.  Plaintiff's need for these documents outweighs any imagined privacy interest Mr. Williams allegedly have in this matter, as it was Mr. Williams' testimony that deprived this Plaintiff of his actual (not imagined) liberty in the tune of sixteen years, running consecutively to the nineteen years and seven months he is serving.

7.  The government in refusing to produce the requested documents, failed to identify where within the requested tapes that could remotely endanger the personal privacy of the alleged third party.[1]

## RELIEF SOUGHT

8.  Plaintiff requests the defendant to produce the requested documents immediately.

Respectfully Submitted:

Noah Moore

Noah Moore, Pro Se
Plaintiff

---

[1]
In Mays v. Drug Enforcement Administration, 234 F.3d 1324(D.C.Cir. 2000), this Court opined that the government's denial of production of documents was in error because, among other things, the exemption which the government relied upon to deny relief

contd. from p.2, n.1

"...ordinarily permits the government to withhold only the specific information to which it applies, not the entire page of document in which the information appears; any non-exempt information must be segregated and released, See 5 U.S.C., §552(b), unless 'exempt and non-exempt information are intricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." Id., @ 1327, citing Neufeld v. I.R.S., 646 F.3d 661, 666(D.C.Cir. 1981).

    In denying Plaintiff's request, the government did not state that exemptable items or portions in the log somehow intertwined with the non-exemptable ones. Nor did the government state that there were names and identities not already known by the parties in Plaintiff's criminal prosecution, that needed blocking out. As such, this Court should issue an order compelling the government to produce the requested documents, or certify under oath and affirmation, perhaps subject to an in camera review by this Court, that the exemptable portions of the logs are intertwined with the non-exemptable portions that excision would be impracticable. See Benneth v. Drug Enforcement Admin., 55 F.Supp. 2d 36(D.D.C. 1999)(approving the holding of names and identities of special agents under FOIA exemption.) Please See Exhibit A-1 through A-6

Dated: __6__ day of __January__, 2008.

Exhibit A 1

P.I. Statement 1380.05
August 1, 1995
Attachment S, page 1

# INMATE TELEPHONE MONITORING REPORT

No. Inmate Called : _011234149 33108_

Call Date : _6-7-01_   Call Time : _11:30AM_  Line # _17_

Name Inmate Used : _NOAH_

_24804013_                    Other Party : _MALE_

Inmate Identified as : _MOORE, NOAH_          By Officer : _ITS_

Call Originated from : _2BL_           Housing Unit

Names mentioned during the call : _Natasha_

| Time | Comments on call |
|------|------------------|
| | I/m   HELLO |
| | MALE   HELLO  I JUST GOT IN  2 DAYS ago |
| | I/m   OH YEAH |
| | MALE   I lost my papers, past port, everything Pouch telephone Phone book   I WAS going to CALL her From INDIA |
| | I/m   IF THE PHONE  CUTS OFF  I CALL YOU back on Sunday |
| | MALE   YEAH  CALL back on SUNDAY  AMERICAN time |
| | I/m   HOW YOU MOMA |
| | MALE   SHE'S  IN  New Jersey |
| | I/m   OKAY |
| | MALE   BUT EVERYTHING  IS  ALRIGHT   YOUR MOMA  WELL  GETTING  HER  BRICKS |
| | I/m   ALRIGHT   THIS  PHONE  IS  ABOUT TO  HANG  UP |
| | Male   O K |

**COPY**

_6-20-01_         _Tmy_
DATE              INITIAL

Call Monitored By : _Cmy_

Exhibit A-2

| | |
|---|---|
| 1 | THE COURT:   Are there anymore witnesses from Yazoo |
| 2 | City?   This is the last one? |
| 3 | MS. TETLOW:   Yes. |
| 4 | THE CLERK:   Please, raise your right hand. |
| 5 | WHEREUPON: |
| 6 | THOMAS ANTHONY MILLER |
| 7 | THE CLERK:   Please have a seat, state your name and |
| 8 | also spell it. |
| 9 | THE WITNESS:   Thank you. |
| 10 | My name is Thomas Anthony Miller.  And spell it, ma'am? |
| 11 | THE CLERK:   Yes, sir. |
| 12 | THE WITNESS:   A-N-T-H-O-N-Y  M-I-L-L-E-R. |
| 13 | DIRECT EXAMINATION |
| 14 | BY MR. CARTER: |
| 15 | Q.   Mr. Miller, where do you work? |
| 16 | A.   I work for the Bureau of Prisons at FCI, Yazoo City. |
| 17 | Q.   And how long have you worked there? |
| 18 | A.   Since we opened, so about eight years ago. |
| 19 | Q.   And what do you do there now?  What's your job title? |
| 20 | A.   I'm an IT Specialist.  I work in the Computer Services |
| 21 | Department. |
| 22 | Q.   And how long have you been doing that? |
| 23 | A.   For about the last year and a half. |
| 24 | Q.   At your time at Yazoo City did you ever monitor inmates |
| 25 | phone calls? |

1  A.    Yes, sir, I did.  I believe it was March of 2001 to about
2  March of 2002.
3  Q.    Okay.  And what was your job title at that time?
4  A.    I was a Senior Officer Specialist and assigned to the
5  telephone monitor position.
6  Q.    And, sir, how did you go about monitoring phone calls?
7  A.    I think I worked the morning shift, and -- you want me to
8  explain in full detail, Mr. Carter?
9  Q.    Well, did you listen to the live telephone conversations or
10  were they recorded conversations?
11  A.    Both, sir.
12  Q.    Did you ever monitor any phone calls from an inmate Noah
13  Moore?
14  A.    Yes, sir, frequently.
15  Q.    When did you first monitor phone calls from Noah Moore?
16  A.    I believe the first I listened to a phone call of his was
17  around April of 2001?
18  Q.    Are you familiar with his voice?
19  A.    Yes, sir.
20  Q.    Why did you monitor that phone call?
21  A.    When I got into that position, his calls would -- when he
22  would place a phone call a little red check mark would appear by
23  his name and it makes an audible tone, meaning that his was an
24  alert call, but at the time we were not aware of why he was on
25  alert status, as there had recently been a full change of the

1  supervisors in the office.

2  Q.   Who had been the previous supervisor?

3  A.   Lieutenant Jeff Keels.

4  Q.   And who replaced him?

5  A.   Lieutenant Michael Lala.

6  Q.   When was this exactly?  What year?

7  A.   2001.

8  Q.   What month?

9  A.   Around March.

10  Q.   Which shift did you monitor?  Did you monitor a shift?

11  A.   I did.  I worked the 6:00 a.m. to 2:00 p.m. shift.

12  Q.   And who worked the other shift?

13  A.   Richard Turner.

14  Q.   Was there only two shifts?

15  A.   And a relief shift as well.  There's a relief shift for

16  each of us.

17  Q.   Who monitored the phone calls on these shifts prior to your

18  monitoring them?

19  A.   I don't know who both parties were.  Tracey Hodo -- I'm

20  sorry, now it's Rubiola, she got married -- had the day shift

21  before I did.

22  Q.   And you replaced her?

23  A.   I did, sir.

24  Q.   What did you notice when you began monitoring Mr. Noah

25  Moore's calls?

1  A.    Most of his calls had the ring of being encrypted or coded

2  in the tones of the calls were such that it sounded

3  conspiratorial at lot, so at first we developed a mild level of

4  suspicion, and when I say "we", I mean, we passed --

5        MR. CHANEY:    Objection, Your Honor, to the reference

6  to coded phone calls.   Again, the same basis.   This person's not

7  been qualified as an expert.

8        THE COURT:    Let me hear your question.

9        MR. CARTER:    Let me rephrase that.

10                       EXAMINATION

11  BY MR. CARTER:

12  Q.    But not as an expert, but as lay a person, why did you

13  believe this to be coded?   Not as expert, but as one -- do you

14  speak English, sir.

15  A.    I do, sir.

16  Q.    Are you familiar with the English language?

17  A.    Extremely.

18  Q.    Do you feel that you can understand a conversation if it's

19  spoken plainly and clearly in front of you?

20  A.    I can, sir.

21        MR. CHANEY:    Objection.

22        THE COURT:    I'm allowing the testimony for the same

23  reason I previously described to the jury to show why he was

24  suspicious, and for that purpose only.   Go ahead.

25                       EXAMINATION

1 | BY MR. CARTER:

2 | Q.   And why did this make you suspicious?

3 | A.   There seemed to be an avoidance on the two parties, or on

4 | multiple parties when speaking with Noah Moore to be descriptive

5 | about the topic of the nouns of each sentence.   There was also a

6 | lack of complete sentences.   A lot of um's and pauses, and do

7 | you understand me and things like that at the end of each

8 | sentence.

9 | Q.   Did you get the sense, sir, that they didn't want whoever

10 | was listening to understand what was being said?

11 | A.   Yes, sir.

12 |         MR. CHANEY:   Objection, Your Honor.

13 |         THE COURT:   Sustained.

14 |         MR. CHANEY:   Again, this is opinion.

15 |         THE COURT:   Sustained.

16 |         Disregard the last answer.

17 |         MR. CARTER:   One moment, Your Honor..

18 |                     EXAMINATION

19 | BY MR. CARTER:

20 | Q.   I hand you a pack of documents for identification purposes,

21 | which I'll mark as Government Exhibit 13.   All right.   Let me

22 | ask you to take a moment to look through those and tell me what

23 | those documents are?

24 | A.   These are some of the telephone monitoring reports or call

25 | logs, as we refer to them, during the duration of the time that

1  I was monitoring telephone calls of Noah Moore.

2  Q.    Let me direct your attention to a call that occurred on

3  June 1, 2001, do you recall that call?

4  A.    Yes, sir, I do.

5  Q.    Did you prepare a log of that call?

6  A.    I did.

7  Q.    Do you remember that call as you sit here.

8  A.    Yes, sir.

9  Q.    Who was talking?

10  A.    Noah Moore and a female.  I was not able to identify the

11  female.

12  Q.    What were they talking about?

13  A.    This was a conversation that seemed at first to start off

14  as being mostly general in topic, but toward the end of the

15  call there was something in particular that made me -- as you

16  can tell, I made a copy of it for my supervisor.  I passed this

17  onto him because at the end of the call the female that he was

18  speaking to -- that Noah Moore was speaking to -- tells him that

19  some bad stuff came off of the truck and the inmate responded,

20  "Well, you need to call the midget", and we knew the midget to

21  be Tunde.

22  Q.    How did you know the midget to be Tunde?

23  A.    Just from frequent times that he had been referred to as

24  the "midget", and "Tunde", or "T" in various phone calls.

25  Q.    And what did you do after listening to this phone call?

1  A.    I made a photocopy of it, I initialed and dated it and

2  passed it to my supervisor, and at this point we kind of had a

3  little sit down, a meeting about our suspicions of what was

4  going on.

5  Q.    Who's we?

6  A.    Myself and Lieutenant Lala?

7  Q.    Lieutenant Lala?

8  A.    Correct.

9  Q.    Anybody else involved?

10  A.    I think it was just the two of us at that point.

11  Q.    And what was the substance of this meeting?

12  A.    We were just reviewing some of the other call logs that I

13  had done so far on Noah Moore, and, consult -- I was consulting

14  him on why I felt he needed to stay on the alert status for his

15  phone calls so that we could continue to monitor him.

16  Q.    And what did you do as a result of this meeting with

17  Lieutenant Lala?

18  A.    Lieutenant Lala.  At this point we had just decided that we

19  were going to continue monitoring the telephone calls to see if

20  we still thought that these calls were coded.

21  Q.    Do you recall monitoring a phone call on June 5, 2001 at

22  about 7:42 a.m.?

23  A.    Yes, I do.

24  Q.    Who was that phone call between?

25  A.    This was Noah Moore trying to call to Nigeria I believe to

1   speak to Tunde, but a female, an unidentified female answered
2   the telephone there.

3   Q.   Are you able to determine from listening to the call the
4   female's name?

5   A.   No, I was not.

6   Q.   Do you recall what they were talking about in that
7   conversation?

8   A.   This particular call sticks out --

9        MR. CHANEY:   Objection, Your Honor.   The information
10  within the call logs, if they are to be provided to the jury,
11  they speak for themselves.  And with respect to this officer, he
12  did not provide us any tapes or anything with respect to those
13  calls.   Our objection previously had been to them testifying
14  regarding the substance of the calls, and that's exactly what
15  he's doing with respect to these calls again.

16       THE COURT:   Well, he's not testifying from the
17  document itself, are you?

18       Are you testifying as to your independent recollection
19  of the conversation, or can you only do so from the document
20  itself?

21       THE WITNESS:   No, sir, I recall the -- I mean, I
22  recall the conversations.  The information, the log just kind of
23  helps me remember a topic that's pushing close to four years
24  old.

25       MR. CARTER:   And for the record, Your Honor, my

1  question was do you recall the conversation, what was the topic

2  of the conversation.

3       THE COURT:   Well, the objection to that question is

4  overruled.   What's your next question?

5       MR. CHANEY:   Well, Your Honor, with respect to that

6  can we then have him testify regarding what he recalls, and if

7  he needs his recollection refreshed, then those items were

8  provided him for the purpose of refreshing?  If he has specific

9  knowledge, he can testify.  He's qualified as a witness to

10 testify regarding what the calls are.

11      MR. CARTER:   Mr. Miller, would you push those

12 documents to the side, just to one side there.

13      THE COURT:   And if you need any of the documents to

14 refresh your recollection, please say so, okay.  All right,

15 let's ask the question.

16                          EXAMINATION

17 BY MR. CARTER:

18 Q.   Let's go back to this call.  What was the substance of the

19 conversation?

20 A.   In this particular call, and at this point, myself and

21 Lieutenant Lala had pulled the presentence investigation of Noah

22 Moore in order to find out more about his previous case.

23      MR. CHANEY:   Objection, Your Honor, to references

24 about previous cases.  This has no bearing with respect to this.

25 The question was what was the substance of the telephone call.

1          MR. CARTER:    He's explaining it, Your Honor, what he
2   did and why.

3          MR. CHANEY:    The question was the substance of the
4   telephone call and it does not refer to presentence reports in
5   the telephone call, Your Honor.

6          THE COURT:    What's the question again?

7          MR. CARTER:    What was the substance of that telephone
8   conversation.

9          THE COURT:    Answer the question.

10          THE WITNESS:    In this particular conversation Noah
11   Moore asked to speak I believe it was to Tunde and identifies
12   himself as Slim, and the female caller asks him "Slim who?"  And
13   he identifies himself as Metz, and Metz being the last name of
14   his brother.

15                              EXAMINATION

16   BY MR. CARTER:

17   Q.    So he identified himself as Slim Metz?

18   A.    Yes, sir.

19   Q.    Did there come a point in time when you stated that you
20   were suspicious?  Did your suspicions increase or decrease over
21   time?

22   A.    They increased steadily over time.

23   Q.    What caused them to increase?

24   A.    The code that they were using in these telephone calls
25   seemed to constantly change as far as the nouns.  They would

1  change regularly leading a listener, like myself, to believe

2  that this was definitely a change in code regularly, so, of

3  course, that draws our attention.  But again, in this particular

4  call when he identifies himself as Metz.  The name Metz carries

5  a good bit of weight in the drug community.

6          MR. CHANEY:   Objection, and move to strike, Your

7  Honor.

8          THE COURT:   Sustained.

9          Disregard that last answer by  the witness.

10                          EXAMINATION

11  BY MR. CARTER:

12  Q.   Did you listen to a call on June 19, 2001?

13  A.   Yes, sir.

14  Q.   Did you review that tape of that telephone call?

15  A.   Yes, sir.

16  Q.   And did you review the transcript of that tape?

17  A.   Yes, sir, I have.

18  Q.   And does that transcript fairly show the substance of the

19  conversation on that tape?

20  A.   Yes, sir, it does.

21          MR. CARTER:   At this time I'm going to hand you a copy

22  of that transcript which I'm going to mark as Government Exhibit

23  14.

24          Your Honor, I offer that government's exhibit into

25  evidence as Government Exhibit 14.

Exhibit A-3

Program Statement 1380.05
August 01, 1995
Attachment S, Page 1

# INMATE TELEPHONE MONITORING REPORT

Number Inmate Called: 011-234-803-304-2602

Call Date: Feb. 11, 2002            Call Time: 8:06 A.M.            Line #: 020

Name Inmate Used: Slim                        Other Party: Male (believed to be Segun)

Inmate Identified As: Moore, Noah #24804-013            By Officer: I.T.S. II

Call Originated From (Rec. Ch. & Housing Unit): 020 - Unit 2B Lower

Names Mentioned During The Call: *None*

| Time: | Comments: |
|-------|-----------|
| 8:06 A.M. | Segun: "Did you get my letter? I've been waiting for you to call man." |
| (Pg 1 of 3) | Moore: "Yeah. By you telling us to send it Wednesday I'll have a better chance |
| | 'cause I haven't been able to catch up to my little partner. He just had a baby |
| | and something happened to the girl. So they have been in the hospital. So I will |
| | have a better chance to get what you said in the letter. You know?" |
| | Segun: "Ok. Don't send it this Wednesday. I'm leaving town and I will be gone |
| | for a week. After a week the people will be ready to get on plane. Ok?" |
| | Moore: "Ok." |
| | Segun: "So even if we still have up to next week it would be very good because |
| | I need that to get things going. Now the burial is over, everyone is working, and |
| | it's time to make a move man. And that's all I am waiting for. When I get that, |
| | you just tighten your end and that's it man. Just tell her to tell me what to do, |
| | and that's it. That's all I'm waiting for because it's been bothering me - when I |
| | didn't hear from you I had to send an E-mail so it was to you. Ok?" |
| | Moore: "It will be the original, umm, briefs, and all that huh?" |
| | Segun: "Hey, Hey, It will be, man. I got a tough lawyer in town from |
| | Libofam (sp?) to do it. It's good man. Listen. All before I didn't know the |
| | people because I had to go through somebody else, I had to go through |
| | somebody. Now this is, this lawyer is, my people. It's like a fourth cousin. So |
| | I'm dealing with my own family. You understand what I'm saying?" |


COPY

Program Statement 1380.05
August 01, 1995
Attachment S, Page 1

| (Pg 2 of 3) | Moore: "Yeah." |
| --- | --- |
|  | Segun: "Because the other thing, I'm still paying for that.  Which you may not know, but between you and I, I'm still paying the debt for the other one.  This one is different.  I'm not going through nobody.  If I don't have it - it's not done.  Period." |
|  | Moore: "Yeah." |
|  | Segun: "Ok, so that's the situation." |
|  | Moore: "Yeah." |
|  | Segun: "I'm glad you called man.  So listen, even if you need up to next week its fine, but do me a favor.  What's the calendar like over there?  What is today's date?  The eleventh or twelfth?" |
|  | Moore: "The eleventh." |
|  | Segun: "Eleventh.  How can we do it this - not this weekend.  I will be gone this Friday, I mean Wednesday.  How about next week?  When can you call me?  Next weekend?" |
|  | Moore: "Any day." |
|  | Segun: "Ok.  Today is the eleventh.  A week from Sunday will be what?" |
|  | Moore: "The twenty-fourth." |
|  | Segun: "You think it will be here by then?" |
|  | Moore: "Yeah.  Way before then." |
|  | Segun: "Way before then?" |
|  | Moore: "yeah." |
|  | Segun: "Ok.  If it will be here way before then, this is what I will do: I will just drop my telephone for my brother to answer the phone.  When you call you tell him, and I will tell him to tell my people - to give them the go-ahead." |
|  | Moore: "Ok." |
|  | Segun: "That's, that's, so if up to a week from Sunday.  When it's done this week or next week, any time you know its done just give me a call.  My brother |


COPY

Program Statement 1380.05
August 01, 1995
Attachment S, Page 1

| (Pg 3 of 3) | will answer the phone and take the message, and I will tell him to go |
| | immediately after your calling.  He will call the people, they will send the |
| | Western Union, and it will take off." |
| | Moore: "Alright." |
| | Segun: "So how you doing?  You ok?" |
| | Moore: "Yeah." |
| | Segun: <Laughs> "Yeah man.  We will pull through though.  We'll pull through |
| | man.  We'll pull through.  Yeah, we will pull through.  Just do me a favor and |
| | tell her to be ready.  That's the only person,  I will submit all the, all the, briefs |
| | to her.  For her to read and take it to the lawyer and the lawyer to proofread. |
| | And then it's on.  Ok?  So I will give to her all the copies of the brief." |
| | Moore: "Ok." |
| | Segun: "Ok?  So I will give everything to her and I hope she can understand the |
| | whole legal terminology in the brief.  Ok?" |
| | Moore: "Alright." |
| | Segun: "Ok that's the only person I supposed - I'm giving it to, right?" |
| | Moore: "Yeah." |
| | Segun: "Ok.  That's all and nothing more man." |
| | Moore: "No.  Uh-uh." |
| | Segun: "Ok Slim.  Thank you." |
| 8:11 A.M. | End call. |



Program Statement 5264.06
August 01, 1995
Attachment S, Page 1

Exhibit A-4

# INMATE TELEPHONE MONITORING REPORT

Number Inmate Called: _SO4-283-2114_

Call Date: _6/16/01_          Call Time: _0843_          Line #: _007_

Name Inmate Used: _NOAH_                    Other Party: _FEMALE_

Inmate Identified As: _MOORE, NOAH 28404-013_          By Officer: _L75_

Call Originated From (Rec. Ch. & Housing Unit): _019-2RL_

Names Mentioned During The Call: _STANK, GUYWA, SHANE._

| Time: | Comments: |
|-------|-----------|
| 8:43 am | I/m: JUST WAIT TO NEXT WEEK AND SEE IF YOU CAN GET HIM HERE SATURDAY. I KNOW YOU'RE CONCERNED ABOUT SPENDING MONEY, BUT I WILL PAY YOU BACK. I'M JUST WORRIED ABOUT GETTING FREE. |
| | F/m: I CAN'T RENT A CAR FIRST FOR HIM. IT'S NOT THAT I DON'T WANT TO, I CAN'T. HE DOESN'T HAVE A CREDIT CARD EITHER |
| | I/m: EXPLAIN IT TO HIM. PEOPLE DON'T THINK I NEED HIM HERE FOR THIS WEEKEND. |
| | F/m: YOU KNOW WHO I SAW? WHAT'S HIS NAME? GAYL? GUYWA? WHATEVER. HE SAID HE IS GONNA GO SEE SHANE. |
| | I/m: DON'T COME UP THIS WEEKEND. I DON'T NEED TO SEE YOU UNTIL YOU CAN BRING STANK. |
| 8:53 am | END CALL. |
| | |
| | |
| | |
| | |
| | |

**COPY**

_6-20-01_          _T.S_
~~DATE~~          INITIAL

Call Monitored By: _____

```
 1          THE COURT:   Thank you.

 2          You could step.   Thank you.

 3          Is there any further need for this witness?

 4          MR. CARTER:   No, Your Honor.

 5          THE COURT:   By the defense?

 6          MR. BARNARD:   We don't need her any further.

 7          THE COURT:   Thank you.

 8          Let's call your next witness, Government.

 9          MS. TETLOW:   The Government calls Tony Miller, or --

10   you want him, or Jackie Camper?

11          MR. CARTER:   Jackie Camper.

12          MS. TETLOW:   We're going to do Jackie Camper real

13   quickly.

14          THE CLERK:   Come forward and please raise your right

15   hand.

16                          JACQUELINE CAMPER

17          After having been first duly sworn, did testify under

18   oath, as follows:

19          THE CLERK:   Please have a seat and state your name and

20   also spell it.

21          THE WITNESS:   Jacquelin Camper.   J-A-C-Q-U-E-L-I-N-E.

22   Camper, C-A-M-P-E-R.

23                          DIRECT EXAMINATION

24   BY MR. CARTER:

25   Q.   Ms. Camper, where do you work?
```

1  A.  Bureau of Prisons.

2  Q.  And what do you do there?

3  A.  I'm a Senior Officer Specialist.

4  Q.  And where at the Bureau of Prisons, which facility?

5  A.  Oh, Yazoo City.

6  Q.  At Yazoo City?

7  A.  Mississippi.

8  Q.  And how long have you been there?

9  A.  Five years.

10  Q.  And what is your job title?

11  A.  Senior Officer Specialist.

12  Q.  And where did you work before that?

13  A.  Hinds County Sheriff's Department, Jackson, Mississipi.

14  Q.  How long were you there?

15  A.  Two years.

16  Q.  What did do you there?

17  A.  I was a jailer.

18  Q.  A jailer?

19  A.  Yes.

20  Q.  And prior to that?

21  A.  Mississippi Department of Corrections.

22  Q.  And what did you do there?

23  A.  I'm a correctional officer.

24  Q.  How long were you there?

25  A.  Two years.

1  Q.   Now, at Yazoo City were you ever involved in monitoring

2  inmates phone calls?

3  A.   Yes.

4  Q.   When?

5  A.   June I happened to have a quarter back in 2001.

6  Q.   A quarter, for a quarter in 2001?

7  A.   Yes.

8  Q.   What quarter do you know, do you recall?

9  A.   No, I don't.

10  Q.   And how did you monitor phone calls?

11  A.   We listened through earphones and you have a phone screen

12  that just shows up.

13  Q.   Did you ever monitor any phone calls for Noah Moore?

14  A.   Yes, sir.

15  Q.   And how do you know you monitored calls for Noah Moore?

16  A.   I recognized his voice.

17  Q.   You recognized his voice?  Have you become familiar -- when

18  you in were monitoring the calls familiar with Noah Moore's

19  voice?

20  A.   Yes.

21  Q.   Do you recall any conversations that you monitored of Noah

22  Moore?

23  A.   No.

24  Q.   Let me hand you two documents, and ask you if you can

25  identify these documents?

```
 1              THE COURT:   What's the number of those documents?
 2              MR. CARTER:   11 and 12, which I'll mark for
 3    identification at this point in time.
 4              THE WITNESS:   Yes, I did write it.
 5              THE COURT:   Wrote what?
 6              THE WITNESS:   This document.
 7              THE COURT:   Which one is that?
 8              THE WITNESS:   Both.
 9                             EXAMINATION
10    BY MR. CARTER:
11    Q.   Let's start with what's been marked as Government Exhibit
12    Number 11, what is that document?
13    A.   That's the inmate telephone monitoring report.
14    Q.   Is that something that you prepared in the ordinary course
15    of your duties?
16    A.   Yes, sir.
17    Q.   And when did you prepare that document?
18    A.   6-7-01, 11:30 a.m..
19    Q.   Is it accurate and complete as far as you can tell?
20    A.   Yes, sir.
21    Q.   Looking at that, does that refresh your recollection as to
22    that conversation that day?
23    A.   No, sir.
24    Q.   Let's look at the next exhibit.  What is that document?
25    A.   It's also an inmate's telephone call monitoring report.
```

1  Q.    That's Exhibit Number 12.

2  A.    Yes.

3  Q.    And when was that prepared?

4  A.    June 15th, '01, 8:27 a.m..

5  Q.    And is that document accurate and complete?

6  A.    Yes.

7  Q.    Does that refresh your recollection as to that call?

8  A.    No.

9  Q.    When you wrote that information down is that because you

10  heard Mr. Noah Moore say it?

11  A.    Say again?

12  Q.    What you've written down there, is it written down there

13  because that is what you heard Mr. Noah Moore say?

14  A.    Yes.

15        MR. CARTER:  Your Honor, at this point in time, I

16  offer Government's Exhibits 11 and 12 as past recollection

17  recorded.

18        MR. BARNARD:  Objection.

19        THE COURT:  Under the Rule, although if you lay a

20  proper foundation it can be read into evidence.  It cannot

21  offered except by an adverse party, which would be the defense,

22  which is not offering it into evidence.

23        MR. CARTER:  Yes, Your Honor, you're correct, and I

24  apologize.  I meant to say that I want to publish it to the

25  jury.  I'd like to read it to jury.

1        THE COURT:   Any objection to that?

2        MR. BARNARD:   Yes.

3        THE COURT:   What's the basis?

4        MR. BARNARD:   She says she doesn't remember.

5        THE COURT:   If they're offering it as past recorded

6   recollection, what is the basis of your objection, other than

7   the fact she couldn't remember?  That's one of the purposes

8   behind the Rule.

9        MR. BARNARD:   Well, Your Honor, we've heard the tapes

10   just minutes ago, other tapes: "Pizzas, Visa".  She doesn't

11   even remember it.  The prejudicial effect far outweighs the

12   probative value.  It's very dangerous and we would object to it.

13        THE COURT:   Tell me what procedure you used in going

14   ahead and writing those notes there on Government Exhibits  11

15   and 12?

16        THE WITNESS:   When we listen to a call a red light

17   comes up alert call and it'll have his name written on the

18   telephone screen.

19        THE COURT:   Okay.  And after reviewing those documents

20   you have no independent recollection of what is contained on

21   those documents?

22        THE WITNESS:   Repeat, Judge?

23        THE COURT:   Does looking at those documents refresh

24   your recollection as far as the contents of the documents?

25        THE WITNESS:   Well, Exhibit 11, I kind of recall on

 1 | that one.

 2 | THE COURT:   Well, let's start with Government Exhibit

 3 | 11.  Having looked at Government 11, you're saying now having

 4 | looked at it you can now testify independently as to what the

 5 | contents of the conversation was, according to your memory, can

 6 | you do that?  Can you not do it without the paper?

 7 | THE WITNESS:   Well, I kind of remember a little.

 8 | THE COURT:   I'm sorry?

 9 | THE WITNESS:   I kind of remember on the conversation.

10 | EXAMINATION

11 | BY MR. CARTER:

12 | Q.   What do you recall about the conversation?  Who's talking?

13 | A.   Noah Moore and another male on the other line.

14 | Q.   What are they talking about?

15 | A.   What I wrote here, sir.

16 | MR. BARNARD:   Objection.

17 | THE COURT:   Okay.  She has no independent --

18 | MR. CARTER:   She has no recollection, Your Honor,

19 | but, however, under the rules, under 803(5), we're allowed to

20 | publish this document to the jury as past recollection recorded.

21 | Where there may be some dispute as to whether or not it comes

22 | into evidence, the Rule is clear that the jury can see this

23 | document, or it can be read the information.

24 | THE COURT:   Do you recognize the handwriting on those

25 | documents as being your own, is that correct?

1          THE WITNESS:   Yes, sir.

2          THE COURT:   All right.

3          MR. CARTER:   At this point in time, Your Honor, I

4    would like to read Government Exhibit Number 11 into the record.

5          MR. BARNARD:   Same objection.

6          THE COURT:   All right.  I find that the government's

7    made a sufficient showing to allow it into evidence as a

8    recorded recollection and I allow her to read Government's

9    Exhibits 11 and 12 to the jury.

10         I also find that the probative value of such evidence

11   is not substantially outweighed by any danger of unfair

12   prejudice, confusion of the issues, etcetera.

13         All right, ma'am, go ahead.  You can read Government

14   Exhibits 11 and 12.

15         THE WITNESS:   "INMATE:   Hello.

16         MALE:   Hello, I just got in two days ago.

17         INMATE:   Oh, yeah.

18         MALE:   I lost my papers, passport, everything, pouch,

19         telephone, phone book.  I was going to call her from

20         India".

21         INMATE:   If the phone cuts off I call you back on

22         Sunday.

23         MALE:   Yeah, call back on Sunday American time.

24         INMATE:   How you momma?

25         MALE:   She's in New Jersey.

1         INMATE:   Okay."

2         MR. BARNARD:   I have to object again.  We don't even

3  know who --

4         THE COURT:   I already ruled on the objection.

5         MR. BARNARD:   We don't even know who the other male is

6  at this time, Judge.

7         THE COURT:   I have already ruled on the objection.

8  You will have an opportunity to cross-examine her, Mr. Bernard.

9         Thank you.

10         Go ahead, continue, ma'am.

11         THE WITNESS:   "MALE:   But everything is all right.

12         Your momma will be getting her bricks.

13         INMATE:   All right.  This phone is about to hang up.

14         MALE:   Okay".

15                         EXAMINATION

16  BY MR. CARTER:

17  Q.   Did you understand what was meant by "Your momma will be

18  getting her bricks"?

19         MR. BARNARD:   Objection.

20         THE WITNESS:   No.

21         THE COURT:   Sustained.  Sustained.  Although, I think

22  she already answered "no", but the objection's sustained.

23                         EXAMINATION

24  BY MR. CARTER:

25  Q.   Do you recall hearing any other references to bricks in

```
 1  phone calls you monitored of the defendant Noah Moore?
 2  A.   No, sir.
 3  Q.   At the top of the page there's a number that's called, can
 4  you please read the number that's called?
 5  A.   01123414933108.
 6  Q.   Do you know if that's a U.S. or an overseas number?
 7  A.   No, I don't know.
 8  Q.   Do you know if that's a U.S. or an African number?
 9  A.   No.
10  Q.   Let's go to Government Exhibit Number 12.  Please read
11  that in evidence.
12  A.   "INMATE:   Hello.
13            FEMALE:   Hello.
14            INMATE:   What you doing.
15            FEMALE:   Drying my hair.
16            INMATE:   Oh, you talked to Catina?
17            FEMALE:   No.  I saw that midget.
18            INMATE:   Oh, you going by to see Glenn.
19            FEMALE:   I don't know.
20            INMATE:   But you going by to see me?
21            FEMALE:   Yeah.
22            INMATE:   You know Catina momma telephone number?
23            FEMALE:   No.
24            INMATE:   You talk to Glenn?
25            FEMALE:   Yeah.  He talked to me last night.  He said
```

1             that the girl was coming to see him.

2             INMATE:   Oh, yeah.  Okay.  I'll call you back later

3             on".

4   Q.   Now, the call date was what?

5   A.   6-15-01.

6   Q.   And what's the number called?

7   A.   504-283-2114.

8   Q.   Do you know who's number that is?

9   A.   No, sir.

10  Q.   In reference to "no, I saw that midget".  Do you know who

11  midget is?

12  A.   No.

13            THE COURT:   To the best of your knowledge, is what you

14  transcribed on Government Exhibits 11 and 12, was it accurate at

15  the time you transcribed it?

16            THE WITNESS:   Yes, sir.

17            THE COURT:   Okay.

18            All right.  Answer defense counsel's questions.

19            MR. BARNARD:   I don't know if he's finished yet.

20            MR. CARTER:   Judge, I'm finished.

21            Nothing further.

22            Thank you.

23                     CROSS-EXAMINATION

24  BY MR. BARNARD:

25  Q.   Okay.  The person that said -- the phone number that was

1  called, what was that again?

2  A.    On what exhibit?

3  Q.    The phone number on the second exhibit, the last one you

4  were talking about, what's the number?

5  A.    504-283-2114.

6  Q.    Okay.  So the person who's talking, that's Noah Moore I

7  take it that's talking?

8  A.    Yes.

9  Q.    Okay.  So the person he's talking to is in New Orleans,

10  correct?

11  A.    Correct.

12  Q.    And so that person saw somebody with the nickname of midget

13  somewhere in New Orleans, in the United States, or where?

14  A.    He didn't say where.

15  Q.    So if the midget or midget lives in Nigeria that would be

16  kind of difficult to see him, right?

17  A.    Uh-huh.

18  Q.    And getting back to the first transcript, the one about the

19  bricks, the person there was a foreigner, presumably a Nigerian

20  or somebody who lives in Nigeria, correct?

21  A.    No.

22  Q.    Well, it's an 011 number, doesn't that mean a foreign phone

23  call?  The first exhibit, you know, the first one that the

24  government read from you see at the top it says 011, isn't that

25  like an area code or something for overseas call?

1  A.    I don't know.

2  Q.    You don't know.  If it is, a person could have a foreign

3  accent, right?

4  A.    True.

5  Q.    It's a long distance call, correct?

6  A.    Maybe.

7  Q.    The quality of the transmission line isn't necessarily

8  perfect, would that be a fair statement?

9  A.    I don't know, sir.

10  Q.    You don't know.  It could be clear.  It might not be clear,

11  right?

12  A.    I don't know.

13  Q.    You don't know.  So if they said brick and it was some

14  other word, it simply could be your misunderstanding, somebody

15  with a Nigerian accent or a bad connection or all of the above,

16  fair enough?

17  A.    No.

18  Q.    Not fair?

19  A.    No.

20  Q.    Did you put this on tapes so you could check it later?

21  A.    No.

22  Q.    So these are just notes?

23  A.    Yes, notes I took.

24  Q.    And you didn't -- even though you thought it was

25  significant, it wasn't so significant as to drop onto a tape to

1  review three or four times to make sure you got it correct?

2  A.   No, I didn't review it.

3  Q.   Did you take any action to seize any documents or any

4  property of Noah Moore as a result of this phone call?

5  A.   No.

6  Q.   On November 5th -- September 5th, 2003, did you seize some

7  documents from Mr. Moore's locker or from his possession?

8  A.   Well, I helped shake down his area.

9  Q.   So you did search his property at that point?

10 A.   Yes.

11 Q.   Was that at the direction of one of your superior's?

12 A.   Yes.

13 Q.   And that was because some federal agents came to visit?

14 A.   I don't know who came.

15 Q.   There wasn't any warning or anything of that nature,

16 correct?

17 A.   No.  Not that I know of.

18         THE COURT:   Anything else?

19         MR. BARNARD:   No, Your Honor.

20         THE COURT:   Thank you.

21                     REDIRECT EXAMINATION

22 BY MR. CARTER:

23 Q.   Ms. Camper, you were just doing your job in taking these

24 logs, correct?

25 A.   Correct.

1  Q.  And you wrote down bricks because that's what you heard?

2  A.  Yes.

3  Q.  Do you know how the term bricks might relate to this case?

4  A.  No, I don't know.

5  Q.  And you were asked by Mr. Barnard that, you know, if

6  someone -- in terms of the reference on Exhibit 12 to "No, I saw

7  that midget," and this being someone in New Orleans, and he

8  asked you if someone lives in Nigeria it would be kind of hard

9  to see him here in New Orleans, you remember that question?

10  A.  Yes.

11  Q.  It wouldn't be hard to see him if he were·here in New

12  Orleans, would it?

13  A.  No.

14          MR. CARTER:  Nothing further.

15          THE COURT:  All right, ma'am, you could step down.

16          Thank you.

17          Is there any further need for this witness?

18          MR. CARTER:  No, sir.

19          THE COURT:  Any further need by the defense?

20          MR. BARNARD:  No, sir.

21          THE COURT:  Thank you.

22          Government Exhibits 11 and 12 will be not be admitted

23  into evidence except they'll be proffered into the record.

24          All right.  Call your next witness.

25          MR. CARTER:  Tony Miller.

Inmate Identified as : **Noah Moore**    By Officer : **JHS**

Names mentioned during the call : **Hillary**

| Time | Comments on call |
|------|------------------|
| f/m | Talks about her cooking + what she's cooking, she tells him she went to the casino and won money. |
| F/m | When you talk to Katina ask when when that bond is coming up her b/c I hope he does it wensday. So yall can come up here friday and so yall can be home for the weekend. |
| F/m | Call his Sister? |
| I/m | No, call Katina and ask her when Hillary is suposed to "Being" That she is coming over here today. I'll ask her |
| f/m | Did (Retha) (cannt understand her) get straight? |
| I/m | Yeah, that when I wanted to talk to you B-4 ~~she~~ ~~got~~ ~~that~~ |
| f/m | You know what she thinks she was goin to do, she ~~just~~ was gonna go get a cashiers check, and ~~made~~ it out in my name, I just do what I want with it. Its like somebody giving me something, I don't know thats much, But from the way she talks, it gonna be something serious + you would have that $ to pay off. By the end of this month I will have that $ |

Call Monitored By : _____

**U. S. Department of Justice**

Federal Bureau of Prisons

Southeast Regional Office

_Bldg 200_
_3800 Camp Creek Parkway, SW_
_Atlanta, GA 30331-6226_

March 15, 2007

Noah Moore
Reg. No. 24804-013
FCI Elkton
PO Box 10
Lisbon, OH 44432

Re: Your Information Request No. 07-02989

Dear Mr. Moore:

This is response to your request for records which are maintained by the Bureau of Prisons. Specifically, you request to be provided with the telephone monitoring logs from January 2003 through September 2003.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act, Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, Release of Information, and Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Commission File.

The documents have been reviewed and processed at this office. The only telephone monitoring logs available are those from January through May 2003. Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), wherein the records are being withheld in from disclosure to you under the following exemptions:

- **(b)(5) - Exempts inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency**

- **(b)(7)(c) - Exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.**

**- (b)(2) - Exempts from mandatory disclosure records relating to the internal rules and practices of an agency.**

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied may be appealed to the Assistant Attorney General, by filing a written appeal within 60 days from the date of this letter. Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal," and should be addressed to the Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530.

Sincerely,

Jeff Campbell
Supervisory Attorney
PO Box 1029
Coleman, FL 33521

APPEAL OF FREEDOM OF INFORMATION ACT

FREEDOM OF INFORMATION ACT APPEAL
OFFICE OF INFORMATION AND PRIVACY
U.S. DEPARTMENT OF JUSTICE
1425 NEW YORK AVENUE, N.W., SUITE 11050
WASHINGTON, D.C. 20530


Case No.# 07-02989

This is an appeal to the denial of information requested by this
undersigned. The request was for telephone call monitoring log reports
(policy statement 1380.05) from January 2003 to May 2003. During
the trial of Noah Moore (the undersigned) that took place on May 17,
2004 and continued through May 20, 2004, at case numner 02-282,
telephone monitoring logs from previous years of 2000 to 2001 and 2002
were used against the undersigned at the trial. Various Bureau of
Prisons correctional officers testified about the phone monitoring
log reports which helped the government convict the undersigned.
Now the undersigned requests these monitoring log reports to further
research his case, and under Title 5, U.S.C., 552(F)(b)(7(B), this
requester is entitled to the information, as there is the great
possibility that the content of the log report could exenorate this
requester.

Accordingly, this undersigned respectfully request that the
earlier denial of the production of this record be reversed, and the
requested information be promptly supplied.

Respectfully Submitted:

Noah Moore, Pro Se
Appellant

Dated: 27 Day of ____ April , 2007.



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                          *Washington, D.C. 20530*

JUN ~~2 5~~ *2007*

Mr. Noah Moore
Register No. 24804-013
Federal Correctional Institution          Re:   Appeal No. 07-1442
Post Office Box 10                               Request No. 07-02989
Lisbon, OH  44432                                JTR:SJV

Dear Mr. Moore:

      You appealed from the action of the Southeast Regional Office of the Federal Bureau of Prisons (BOP) on your request for access to copies of telephone monitoring logs for the time period of January 2003 through September 2003.

      After carefully considering your appeal, I am affirming, on partly modified grounds, BOP's action on your request.  These records are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.97 (2006).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to them.

      BOP properly withheld certain information that is protected from disclosure under the FOIA pursuant to:

      5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices; and

      5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

      If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                    Sincerely,

                    Janice Galli McLeod
                    Associate Director

FCI Elkton
P.O.Box 10
Lisbon, Ohio 44432                                         July 18, 2007

Freedom of Information Act Appeal
Office of Information and Privacy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530

Reconsideration of the Denial of the Appeal of
Freedom_of_Information_Request_Made_Sub_Judice

Case No. 07-02989
Appeal_No._07-1442

This is a request for reconsideration of your June 25, 2007 denial of my appeal of
the Freedom of Information Request. The request was for telephone call monitoring log
reports (Policy Statement 1380.05) from January 2003 to May 2003 up to September 2003.
Prior to the requester's criminal trial that took place on May 17, 2004 through May 20,
2004(Case No. 03-282), telephone monitoring logs were turned over to the requester,
e.g., logs from 2000 to 2002, see Exh. A-1, A-2, A-3 and A-4, as attached herewith.
Therefore, under Title 5 U.S.C., §552(b)(2), which concerns matters that are related
solely to internal Agency practices, is inapplicable once it became a trial matter.
Also, 5 U.S.C., §552(b)(7)(C), which concerns record or information compiled for law
enforcement purposes, the release of which could reasonably be expected to constitute
an unwarranted invasion of the personal privacy of a third party, is inapplicable once
the phone monitoring logs has been testified to at trial by the government witnesses.
See Exh. A-5 and A-6, as attached. The personal privacy of the third party is of no
substance when the documents in question was used to aid the government to obtain a
conviction, which resulted in a sentence of sixteen years of imprisonment for this
requester. Title 5 U.S.C., §552(b)(7)(B) overides the aforementioned exempted sub-
sections due to the fact that to allow these phone logs to be withheld from the requester
would deny him the right to a fair and impartial trial in violation of his Fifth and
Sixth Amendment of the constitution, a reason why Congress enacted §552(b)(7)(B) as
a buffer to prevent such injustice which could arise when a requester is denied
exculpatory phone monitoring logs.

Accordingly, this requester respectfully prays that you reconsider your June 25, 2007
denial in the light of the fact that the same telephone motinoring logs which were
being exempted had already been partly previously been provided to this requester during
his trial.

                                          Respectfully Submitted:
                                          Noah Moore
                                          Noah Moore
                                          Appellant-Pro Se

**U.S. Department of Justice**

Office of Information and Privacy

---

Telephone: (202) 514-3642

Washington, D.C. 20530

AUG 0 3 2007

Mr. Noah Moore
Register No. 24804-013
Federal Correctional Institution
Post Office Box 10
Lisbon, OH  44432

Re:  Appeal No. 07-1442
      Request No. 07-02989
      JGM:SJV:PED

Dear Mr. Moore:

This responds to your letter dated July 18, 2007, in which you requested that I reconsider my decision on your appeal from the action of the Southeast Regional Office of the Federal Bureau of Prisons on your request for access to copies of telephone monitoring logs for the time period of January 2003 through September 2003.

After carefully considering this matter, I have determined that my original decision, as outlined in my letter to you of June 25, 2007, was appropriate.

If you remain dissatisfied with my action on your appeal, judicial review thereof is available to you as indicated in my letter of June 25, 2007.

Sincerely,

Janice Galli McLeod
Associate Director

**U. S. Department of Justice**

Federal Bureau of Prisons

Southeast Regional Office

_____

*Bldg 200*
*3800 Camp Creek Parkway, SW*
*Atlanta, GA 30331-6226*

March 15, 2007

Noah Moore
Reg. No. 24804-013
FCI Elkton
PO Box 10
Lisbon, OH 44432

Re: Your Information Request No. 07-02989

Dear Mr. Moore:

This is response to your request for records which are maintained by the Bureau of Prisons. Specifically, you request to be provided with the telephone monitoring logs from January 2003 through September 2003.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act, Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, Release of Information, and Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Commission File.

The documents have been reviewed and processed at this office. The only telephone monitoring logs available are those from January through May 2003. Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), wherein the records are being withheld in from disclosure to you under the following exemptions:

**- (b)(5) - Exempts inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency**

**- (b)(7)(c) - Exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.**

**- (b)(2) - Exempts from mandatory disclosure records relating to the internal rules and practices of an agency.**

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied may be appealed to the Assistant Attorney General, by filing a written appeal within 60 days from the date of this letter. Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal," and should be addressed to the Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530.

Sincerely,

Jeff Campbell
Supervisory Attorney
PO Box 1029
Coleman, FL 33521

APPEAL OF FREEDOM OF INFORMATION ACT

FREEDOM OF INFORMATION ACT APPEAL
OFFICE OF INFORMATION AND PRIVACY
U.S. DEPARTMENT OF JUSTICE
1425 NEW YORK AVENUE, N.W., SUITE 11050
WASHINGTON, D.C. 20530


Case No.#  07-02989

This is an appeal to the denial of information requested by this

undersigned.  The request was for telephone call monitoring log reports

(policy statement 1380.05) from January 2003 to May 2003.  During

the trial of Noah Moore (the undersigned) that took place on May 17,

2004 and continued through May 20, 2004, at case numner 02-282,

telephone monitoring logs from previous years of 2000 to 2001 and 2002

were used against the undersigned at the trial.  Various Bureau of

Prisons correctional officers testified about the phone monitoring

log reports which helped the government convict the undersigned.

Now the undersigned requests these monitoring log reports to further

research his case, and under Title 5, U.S.C., 552(F)(b)(7(B), this

requester is entitled to the information, as there is the great

possibility that the content of the log report could exenorate this

requester.

Accordingly, this undersigned respectfully request that the

earlier denial of the production of this record be reversed, and the

requested information be promptly supplied.

Respectfully Submitted:

Noah Moore
Noah Moore, Pro Se
Appellant

Dated: 27 Day of ___April , 2007.



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

JUN 2 5 2007

Mr. Noah Moore
Register No. 24804-013
Federal Correctional Institution                Re:  Appeal No. 07-1442
Post Office Box 10                                   Request No. 07-02989
Lisbon, OH  44432                                    JTR:SJV

Dear Mr. Moore:

        You appealed from the action of the Southeast Regional Office of the Federal Bureau of
Prisons (BOP) on your request for access to copies of telephone monitoring logs for the time
period of January 2003 through September 2003.

        After carefully considering your appeal, I am affirming, on partly modified grounds,
BOP's action on your request.  These records are exempt from the access provision of the Privacy
Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.97 (2006).  Because these
records are not available to you under the Privacy Act, your request has been reviewed under the
Freedom of Information Act in order to afford you the greatest possible access to them.

        BOP properly withheld certain information that is protected from disclosure under the
FOIA pursuant to:

        5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal
        agency practices; and

        5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law
        enforcement purposes the release of which could reasonably be expected to
        constitute an unwarranted invasion of the personal privacy of third parties.

        If you are dissatisfied with my action on your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                        Sincerely,

                                        Janice Galli McLeod
                                        Associate Director

FCI Elkton
P.O.Box 10
Lisbon, Ohio 44432

July 18, 2007

Freedom of Information Act Appeal
Office of Information and Privacy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530

Reconsideration of the Denial of the Appeal of
Freedom of Information Request Made Sub Judice

Case No. 07-02989
Appeal No. 07-1442

This is a request for reconsideration of your June 25, 2007 denial of my appeal of
the Freedom of Information Request. The request was for telephone call monitoring log
reports (Policy Statement 1380.05) from January 2003 to May 2003 up to September 2003.
Prior to the requester's criminal trial that took place on May 17, 2004 through May 20,
2004(Case No. 03-282), telephone monitoring logs were turned over to the requester,
e.g., logs from 2000 to 2002, see Exh. A-1, A-2, A-3 and A-4, as attached herewith.
Therefore, under Title 5 U.S.C., §552(b)(2), which concerns matters that are related
solely to internal Agency practices, is inapplicable once it became a trial matter.
Also, 5 U.S.C., §552(b)(7)(C), which concerns record or information compiled for law
enforcement purposes, the release of which could reasonably be expected to constitute
an unwarranted invasion of the personal privacy of a third party, is inapplicable once
the phone monitoring logs has been testified to at trial by the government witnesses.
See Exh. A-5 and A-6, as attached. The personal privacy of the third party is of no
substance when the documents in question was used to aid the government to obtain a
conviction, which resulted in a sentence of sixteen years of imprisonment for this
requester. Title 5 U.S.C., §552(b)(7)(B) overides the aforementioned exempted sub-
sections due to the fact that to allow these phone logs to be withheld from the requester
would deny him the right to a fair and impartial trial in violation of his Fifth and
Sixth Amendment of the constitution, a reason why Congress enacted §552(b)(7)(B) as
a buffer to prevent such injustice which could arise when a requester is denied
exculpatory phone monitoring logs.

Accordingly, this requester respectfully prays that you reconsider your June 25, 2007
denial in the light of the fact that the same telephone motinoring logs which were
being exempted had already been partly previously been provided to this requester during
his trial.

Respectfully Submitted:

Noah Moore
Appellant-Pro Se

**U.S. Department of Justice**

Office of Information and Privacy

_____

_Telephone: (202) 514-3642_          _Washington, D.C. 20530_

AUG 0 3 2007

Mr. Noah Moore
Register No. 24804-013
Federal Correctional Institution          Re:   Appeal No. 07-1442
Post Office Box 10                              Request No. 07-02989
Lisbon, OH  44432                               JGM:SJV:PED

Dear Mr. Moore:

    This responds to your letter dated July 18, 2007, in which you requested that I reconsider my decision on your appeal from the action of the Southeast Regional Office of the Federal Bureau of Prisons on your request for access to copies of telephone monitoring logs for the time period of January 2003 through September 2003.

    After carefully considering this matter, I have determined that my original decision, as outlined in my letter to you of June 25, 2007, was appropriate.

    If you remain dissatisfied with my action on your appeal, judicial review thereof is available to you as indicated in my letter of June 25, 2007.

                              Sincerely,

                              Janice Galli McLeod
                              Associate Director

1
08-223
EGS

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS**

Noah Moore

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

# 24804-013

**DEFENDANTS**

United States of America

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-00223
Assigned To : Sullivan, Emmet G.
Assign. Date : 2/11/2008
Description: FOIA/PRIVACY ACT

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

□ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**□ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**□ E. General Civil (Other) OR □ F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Immigration**
□ 462 Naturalization Application
□ 463 Habeas Corpus- Alien Detainee
□ 465 Other Immigration Actions

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
☒ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant

□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.

□ 460 Deportation
□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

2

| ☐ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☐ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 USC 552(a)

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES  ☐ NO   If yes, please complete related case form.

**DATE** 2/1/08   **SIGNATURE OF ATTORNEY OF RECORD** NCD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.